## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK ANTHONY HAWKINS, *et al.*,

        *Plaintiffs*,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, *et al.*,

        *Defendants*.

Civil Action No. 17-1982 (DLF)

### MEMORANDUM OPINION & ORDER

This dispute arises from an interaction between the plaintiffs and a Washington Metropolitan Area Transit Authority (WMATA) police officer, William O'Brien (O'Brien). Before the Court is WMATA's Motion to Dismiss and Officer O'Brien's Partial Motion to Dismiss the Amended Complaint. Dkt. 14. For the reasons that follow, the Court will grant WMATA's motion, and the Court will grant in part and deny in part O'Brien's motion.

## I. BACKGROUND

The plaintiffs, Mark Anthony Hawkins (Hawkins) and his four-year-old daughter Sparkle Hawkins (Sparkle), left the Verizon Center[1] at approximately 9:45 p.m. on February 17, 2017 after attending a performance of Disney on Ice. Am. Compl. ¶ 10, Dkt. 13. The sidewalk was filled with children and parents leaving the show. *Id.* ¶¶ 10−11, 30. Hawkins carried Sparkle on his hip as they left. *Id.* ¶ 12. Near the sidewalk where the pedestrians were leaving the stadium, O'Brien—an officer in WMATA's police force, the Metro Transit Police Department—drove a marked police vehicle. *Id.* ¶¶ 7, 10−14. As O'Brien drove by the crowd, the side view mirror of

---

[1] The Verizon Center has since been renamed the Capital One Arena.

his vehicle allegedly hit Sparkle's arm, and she began to cry. *Id.* ¶¶ 13−15. According to the complaint, O'Brien stopped, got out of his vehicle, and drew his gun which he pointed at Hawkins. *Id.* ¶ 16. While walking from his car to the crowd, O'Brien shouted at everyone— Hawkins, Sparkle, and other pedestrians—and "seemed ready to use his weapon." *Id.* ¶¶ 16−17. Other police officers shouted at O'Brien, urging him "to put away his weapon," *id.* ¶ 17, and at some point as the other officers approached the scene, O'Brien backed down, returned to his vehicle, and drove off, *id.* ¶ 18. After the incident, Hawkins and Sparkle allegedly "continue to suffer" from the "emotional and psychological trauma," *id.* ¶ 20, and Hawkins fears the police will not protect him and might even harm him in the future, *id.* ¶¶ 21−22.

On August 29, 2017, Hawkins and Sparkle filed their complaint in the Superior Court for the District of Columbia, alleging six counts against WMATA and O'Brien. Dkt. 1-2. The defendants removed the case to federal court, *see* Notice of Removal, Dkt. 1-5, and then moved to dismiss all claims against WMATA and to dismiss in part the claims against O'Brien pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, *see* Defs.' Original Mot., Dkt. 6. Subsequently, in their brief in opposition to the defendants' motion to dismiss, the plaintiffs sought to amend their complaint. Pls.' Original Opp'n at 4, Dkt. 9-1 ("Here Plaintiff seeks to amend his complaint and bring suit[] on his own behalf and also Sparkle Hawkins who is a minor. We seek opportunity to file an Amended Complaint to that regard."). Even though the plaintiffs did not move to amend pursuant to Rule 15(a), the Court construed the plaintiffs' request as a motion for leave to amend, and granted the motion. Dkt. 12; *see* Fed. R. Civ. P. 15(a). The plaintiffs filed their amended complaint on February 27, 2018. Dkt. 13. The defendants again moved to dismiss the claims against WMATA in their entirety and to partially dismiss the claims against O'Brien. Dkt. 14.

## II. LEGAL STANDARD

Under Rule 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion, the plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks and citation omitted). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id.* Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a

plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. To state a facially plausible claim, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). Conclusory allegations, however, are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Along with the allegations within the four corners of the complaint, the court can consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Finally, a Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Buchwald v. Citibank, N.A.*, No. 13-cv-0210, 2013 WL 5218579, at *5 (D.D.C. Sept. 17, 2013) (quoting *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992)); *see also* Fed. R. Civ. P. 41(b).

## III.  ANALYSIS

### A.        The Caption of the Amended Complaint

The defendants argue that the Court should dismiss Sparkle Hawkins's claims because the case caption is improper.  In particular, the caption lists "Mark Anthony Hawkins" as the plaintiff without indicating that he is "next friend" of his daughter Sparkle.  *See* Defs.' Mem. at 7, Dkt. 14.  In response, the plaintiffs seek to amend the case caption with "next of friend,"[2] but they do not move for leave to amend.  *See* Pls.' Opp'n at 5, Dkt. 15-1.

Rule 10(a) requires all parties to be listed in the caption of the complaint, Fed. R. Civ. P. 10(a), but errors in captions are common and need not "be viewed as [] fatal defect[s]," 5A Wright & Miller, Federal Practice & Procedure § 1321 (3d ed. 2004 & Supp. 2017); *see Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006) ("While a caption is not determinative as to who is party to a suit, we think that it is entitled to considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints."); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("[T]he caption of the complaint is not part of the statement of the claim under Rule 8.  The caption is something apart, being mandated by a different rule:  Fed. R. Civ. P. 10.  The caption is chiefly for a court's administrative convenience.").  In *Nicol v. Baird*, for example, the plaintiff incorrectly named an individual defendant as the executor of the estate against which the plaintiff sought relief.  234 F.2d 691 (D.C. Cir. 1956).  The D.C. Circuit affirmed the dismissal of claims against the individual defendant whose "name nowhere appear[ed] in the body of the

---

[2] The Court takes this to mean "next friend."  *See* Fed. R. Civ. P. 17(c)(2) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend . . . .").

complaint," but allowed the case to proceed against a trust company that "had been served with a complaint which demanded relief against it in its capacity as executor." *Id.* at 691.

In a similar context, the U.S. Supreme Court has interpreted Rule 3 of the Federal Rules of Appellate Procedure[3] as providing a jurisdictional bar to courts of appeals considering unnamed parties when the caption of the notice of appeal simply says "*et al.*" after one party's name. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315−17 (1988) (rejecting such an appeal where the unnamed parties were "never named or otherwise designated" in the notice of appeal). But the Court recognized that "the rules of procedure should be liberally construed" and "'mere technicalities' should not stand in the way of consideration of a case on its merits." *Id.* at 316. When "a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Id.* at 316−17; *see also Milanovich v. Costa Crociere, S.p.A.*, 938 F.2d 297, 298 (D.C. Cir. 1991) (holding that a caption styled "Gregory Milonovich, *et ux.*" satisfied Appellate Rule 3(c) because "*et ux.*" was more specific than "*et al.*" and the notice of appeal referred to the husband and wife as "plaintiffs" in the plural).

---

[3] Rule 3(c)(1)(A) states that the notice of appeal must

> (A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X" . . . .

Fed. R. App. P. 3(c)(1)(A).

The technical deficiency at issue in this case does not warrant dismissal[4] of Sparkle's claims because the defendants had more than adequate notice that Hawkins is representing his daughter. The original complaint listed Sparkle in the caption, though it improperly indicated that Sparkle was suing in her own capacity. Compl. at 1, Dkt. 1-2. The amended complaint lists both Hawkins and Sparkle and notes that Hawkins is acting in a representative capacity. *See* Am. Compl. ¶ 5. Specifically, the body of the amended complaint says that Hawkins is "representing his minor daughter, Sparkle Hawkins." *Id.* For these reasons, the plaintiffs have satisfied the "functional equivalent" of Rule 10(a) and provided adequate notice to the defendants of Sparkle's claims. *Cf. Torres*, 487 U.S. at 317.[5]

Additionally, the Federal Rules of Civil Procedure evince a "clear preference to resolve disputes on their merits." *Cohen v. Bd. of Trustees of the Univ. of Dist. of Columbia*, 819 F.3d 476, 482−83 (D.C. Cir. 2016). In the interest of a "just, speedy, and inexpensive determination" of this case, *see* Fed. R. Civ. P. 1, the Court will look to the body of the amended complaint in determining the parties to this case: here, Mark Anthony Hawkins in his own capacity and as

---

[4] Nonetheless, the technical deficiency in the caption is particularly glaring because the plaintiffs are represented by counsel. *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *accord Atherton v. Disrict. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

[5] Indeed, the defendants acknowledge as much in their motion to dismiss, and they advance arguments relevant to both plaintiffs' claims. *See* Defs.' Mem. at 7–8, 13−15; *see also* Defs.' Mem. at 7 (not disputing that Sparkle's father can sue on her behalf as "next friend"); Fed. R. Civ. P. 17(c); *Foretich v. Glamour*, 741 F. Supp. 247, 249 (D.D.C. 1990) ("Under D.C. law a custodial parent may bring a next friend suit." (citing *Harmatz v. Harmatz,* 457 A.2d 399, 401 (D.C. 1983)); *accord King v. District of Columbia*, 878 F. Supp. 2d 8, 12 (D.D.C. 2012).

next friend of his daughter, Sparkle. Therefore, the Court will not dismiss Sparkle's claims based on an error in the caption.

**B.      Sovereign Immunity**

Hawkins's and Sparkle's tort claims against WMATA, however, will be dismissed for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). A state is immune from federal suits brought by the state's own citizens or the citizens of another state unless the state waives its sovereign immunity or Congress validly abrogates that immunity. *See Jones v. WMATA*, 205 F.3d 428, 431–32 (D.C. Cir. 2000). WMATA originates in a Compact signed by Maryland, Virginia, and the District of Columbia, and it enjoys the sovereign immunity of those signatories. *Id.*

The signatories to the WMATA Compact have only partially waived sovereign immunity for tort actions. The WMATA Compact states that WMATA "shall not be liable for any such torts occurring in the performance of a governmental function," but WMATA "shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent[s] committed in the conduct of any propriety function."[6] D.C. Code § 9-1107-01(80). The "threshold question," therefore, "is whether WMATA's operation of the Transit Police Force

---

[6] In full, the section provides:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent[s] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. Code § 9-1107.01(80).

constitutes a governmental or a proprietary function within the terms of the Compact."[7] *Morris v. WMATA*, 781 F.2d 218, 220 (D.C. Cir. 1986). Governmental functions, as opposed to proprietary ones, are activities that "amount[] to 'quintessential' governmental function[s], like law enforcement." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *accord Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). "WMATA's police activities are an exercise of governmental function" for which WMATA has not waived sovereign immunity. *Dant v. WMATA*, 829 F.2d 69, 74 (D.C. Cir. 1987). Furthermore, even activities that are not "governmental functions" are protected by sovereign immunity if they involve decisions that are discretionary in nature. *Burkhart*, 112 F.3d at 1217. For example, "employment decisions are not quintessential governmental functions" because "private entities also hire and fire employees," but such employment activities are still protected by sovereign immunity when they are discretionary. *Beebe*, 129 F.3d at 1287. Relevant here, the "hiring, training, and supervision choices that WMATA faces are choices 'susceptible to policy judgment'" and thus discretionary in nature. *Burkhart*, 112 F.3d at 1217; *see also id.* (elaborating that WMATA has "broad power" and discretion in the supervision context to account for policy considerations, such as "budgetary considerations, employee privacy rights, and the need to ensure public safety," and in the training context, considerations such as "fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past").

---

[7] The plaintiffs seem to misunderstand this rule and go so far as to make assertions that aid WMATA's argument for sovereign immunity. The plaintiffs suggest that sovereign immunity is a question of fact, s*ee* Pls.' Opp'n at 5, 8−10, when it is a quintessential question of law. The plaintiffs also rely heavily on nonbinding authority, and they fail to address whether the alleged torts occurred in the course of one of WMATA's governmental functions.

The alleged torts occurred in the performance of WMATA Metro Transit Police activities. O'Brien was on duty, in his uniform, and driving a marked Metro Transit Police vehicle when the alleged offenses were committed. Am. Compl. ¶¶ 7−9, 13−18. Because such police activities amount to a governmental function, WMATA cannot be held liable for the alleged torts that occurred during those activities, *i.e.*, for all tort claims except Count IV. D.C. Code § 9-1107-01(80); *Dant*, 829 F.2d at 74. And WMATA's supervision and training of the police force, and specifically of O'Brien, are either police activities that amount to a governmental function or discretionary activities; either way, WMATA cannot be held liable via Count IV (negligent supervision). *See Dant*, 829 F.2d at 74; *Burkhart*, 112 F.3d at 1217. Therefore, the Court will dismiss the tort claims against WMATA.

### C. Common Law Torts

#### 1. *Choice of Law*

Moving to the plaintiffs' claims against O'Brien, the plaintiffs assert common law claims of battery, assault, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. In determining which law to apply, the Court uses District of Columbia choice-of-law rules. *See Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) ("As a general matter, we must apply the choice-of-law rules of the jurisdiction in which we sit— namely, the District of Columbia."); *Felder v. WMATA*, 174 F. Supp. 3d 524, 528 (D.D.C. 2016) (applying D.C. choice-of-law rules in a WMATA tort case). The District of Columbia employs a "governmental interests" analysis to determine the appropriate law to apply and considers these four factors:

a) the place where the injury occurred;
b) the place where the conduct causing the injury occurred;
c) the domicile, residence nationality, place of incorporation and place of business of the parties; and
d) the place where the relationship is centered.

*District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (citing *Hercules & Co. v. Shama Restaurant*, 566 A.2d 31, 40–41 (D.C. 1989)). In this case, the alleged injury occurred in the District of Columbia, as did the alleged tortious conduct. The parties' only relationship and interaction existed in the District of Columbia. Though the plaintiffs reside in Maryland, Am. Compl ¶ 5, the parties agree that District of Columbia law should apply. Upon consideration of these factors, the Court concludes that District of Columbia law governs the common law claims.

   *2. Battery*

  Although the plaintiffs assert a battery claim, Am. Compl. ¶¶ 25–28, a "claim for battery is actionable only if the plaintiff has alleged that the defendant has committed (a) 'harmful or offensive contact with a person,' which, (b) 'result[s] from an act intended to cause that person to suffer such a contact,'" *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 90–91 (D.D.C. 2010) (quoting *Person v. Children's Hosp. Nat'l Med. Ctr.,* 562 A.2d 648, 650 (D.C.1989)). The plaintiffs do not plead that Hawkins was offensively touched by O'Brien. *See* Am. Compl. ¶¶ 10−28. Rather, they allege that the vehicle driven by O'Brien struck Sparkle only. Am. Compl. ¶¶ 14, 27 ("O'Brien struck Mr. Hawkins['s] daughter, Sparkle, in the arm with the side mirror."). In their opposition brief, however, the plaintiffs assert that "Mr. Hawkins and his daughter were hit with the car driven by Officer O'Brien." Pls.' Opp'n at 13. Even if this altered version of events occurred, it does not change the fact that the amended complaint does not plead any physical contact between O'Brien and Hawkins, much less intentional offensive contact. *See Konah v. District of Columbia*, 815 F. Supp. 2d 61, 71 (D.D.C. 2011) ("Because a motion to dismiss requires courts to test the sufficiency of the factual allegations contained within the four corners of the complaint, the court disregards any additional factual allegations

contained within the plaintiff's opposition to the defendants' motion [to dismiss].").  Therefore, Mark Hawkins's battery claims against O'Brien will be dismissed for failure to state a claim.

### 3.  "Gross" Negligence

The plaintiffs also assert a claim for "W[a]nton, Willful, and Reckless, Gross Negligence."[8]  Am. Compl. ¶¶ 29−36.  While District of Columbia law generally does not recognize degrees of negligence, *see Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012), a claim of "gross negligence" is permitted in limited circumstances— namely, "where gross negligence is a specific element of a claim or defense."[9]  *Id.* at 116.  For example, courts have held —based on a District of Columbia statute—that emergency personnel operating a police car or other emergency vehicle "on an emergency run" can be held liable for gross but not ordinary negligence.  *See, e.g.*, *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997) (citing D.C. Code § 2-412).

No such special circumstance exists here.  The plaintiffs do not allege that gross negligence is a specific element of their claim.  Nor do they claim that O'Brien was on an emergency run when he allegedly drove his van into a crowd of children and families.  Am. Compl. ¶ 30.  Therefore, the plaintiffs' gross negligence cause of action fails.[10]

---

[8] As discussed in Section II.B, WMATA has sovereign immunity, and thus the only question is whether this claim applies to O'Brien.

[9] In such limited circumstances, gross negligence involves "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others."  *Walker*, 689 A.2d at 44.

[10] The defendants initially raised this issue when they moved to dismiss the original complaint. Defs.' Original Mot. at 13.  Although the Court permitted the plaintiffs to amend their complaint, *see* Dkt. 12, the plaintiffs failed to remedy the issue.  Instead, the plaintiffs re-asserted an identically worded "gross negligence" claim.  *Compare* Compl. ¶¶ 29−36, *with* Am. Compl. ¶¶ 29–36.

But the question remains whether plaintiffs' negligence cause of action survives because it satisfactorily alleges a claim of ordinary negligence. *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (a court is not necessarily tied to the plaintiff's "characterization of the action"); *see also Maddox v. Bano*, 422 A.2d 763, 763−64 (D.C. 1980) (approving of court's method of examining the "sum and substance" of the complaint and determining that the actions pleaded were intentional torts rather than negligence claims); *cf. Morfessis v. Baum*, 281 F.2d 938, 939–40 (D.C. Cir. 1960) (concluding that the complaint pleaded malicious prosecution even though the plaintiff labeled the action as "abuse of process" in the complaint). Ordinary negligence requires only "(1) the existence of a duty owed by the defendant to the plaintiff, (2) a negligent breach of that duty by the defendant, and (3) an injury to the plaintiff (4) proximately caused by the defendant's breach." *Powell v. District of Columbia*, 602 A.2d 1123, 1133 (D.C. 1992).

In their purported gross negligence count, the plaintiffs allege that the "defendant drove a police van into a crowd of children and families." Am. Compl. ¶ 30. Additionally, they allege that "O'Brien . . . was operating his vehicle at high speed," *id.* ¶ 13, and the vehicle's side view mirror "struck" Sparkle's arm, *id.* ¶¶ 14, 31. These statements are ambiguous as to whether the contact resulted from careless or deliberate action; of course, the plaintiffs may not know yet. Drawing all inferences in favor of the plaintiffs, the allegations plausibly give rise to a negligence claim. A police officer has a duty of care when engaging in activities that "pose[] an 'unreasonably great risk of harm,'" such as driving near a crowd of pedestrians. *Lipnick v. United States*, 717 F. Supp. 902, 904 (D.D.C. 1989) (quoting *Westinghouse Elec. Corp. v. Nutt,* 407 A.2d 606, 609 (D.C. 1979)); *see also* D.C. Mun. Regs. tit. 18, §§ 2200.3−2200.4 ("In every event speed shall be so controlled as may be necessary to avoid colliding with any person,

vehicle, or other conveyance on or entering the street or highway in compliance with legal requirements and the duty of all persons to use due care.").  O'Brien allegedly breached that duty by driving at a "high speed" "into the crowd," *see* Am. Compl. ¶ 13, causing Sparkle to be hit by the car, *see id* ¶¶ 14, 30–31.  Insofar as the negligence claim extends to O'Brien's driving, the plaintiffs satisfactorily state a claim.

The defendants counter that allowing the plaintiffs to assert a negligence claim against O'Brien would be "inconsistent with the facts and theory asserted in Plaintiffs['] pleadings" because the plaintiffs allege that O'Brien's behavior was intentional.  *See* Defs.' Reply at 9, Dkt. 16.  While there is no inherent inconsistency in allowing a plaintiff to plead multiple theories of liability, one cannot plead the same theory under a variety of labels under District of Columbia law.  Although "one incident may give rise to claims of intentional tort or negligence, these are separate theories of liability which must be presented individually and founded on appropriate evidence." *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000) (rejecting the plaintiffs' combined claims that the defendants had "negligently caused the assault and battery, arrest and detention of plaintiffs").

Though inartfully pleaded, at root the plaintiffs allege two separate negligence claims: one based on O'Brien's driving and another based on his conduct after he exited his vehicle. Specifically, the plaintiffs allege that after O'Brian exited his vehicle, he approached Hawkins and Sparkle with a gun and pointed it at Hawkins.  Am. Compl. ¶¶ 16, 32.  These alleged intentional acts can be fairly read to support a claim of assault,[11] but they do not support a claim of negligence.  Therefore, the Court will dismiss the negligence claim insofar as it extends to O'Brien's conduct after exiting his vehicle.  While the Court dismisses any purported gross

---

[11] O'Brien does not move to dismiss the assault claim.

negligence claim for the reasons stated above, it will not dismiss the ordinary negligence claim insofar as it may extend to O'Brien's driving.

### 4. Negligent Infliction of Emotional Distress

The plaintiffs also assert a claim for negligent infliction of emotional distress. "The tort of negligent infliction of emotional distress in the District of Columbia requires a plaintiff to show that he or she was (1) in the 'zone of danger;' which was (2) created by the defendant's negligence; (3) making the plaintiff fear for his or her own safety; resulting in (4) emotional distress that was serious and verifiable." *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 26–27 (D.D.C. 2017) (citing *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) and *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1991)). "To be in the zone of danger, a plaintiff must be 'physically endangered by the defendant's negligent activity.'" *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015) (quoting *Johnson v. District of Columbia*, 728 A.2d 70, 77 (D.C. 1999)). A defendant has a duty of care toward those individuals who are in danger of physical injury from the defendant's negligence. *Baker*, 572 A.2d at 1067. Alternatively, a plaintiff may establish a defendant's duty of care by showing that "the defendant has a relationship with the plaintiff or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810 (D.C. 2011).

O'Brien argues that he owes no duty of care toward the plaintiffs because he does not have a special relationship with them and did not undertake any obligation implicating their emotional well-being. *See* Defs.' Mem. at 14–15 (citing *Hedgepeth*, 22 A.3d at 810–11). O'Brien's argument is misplaced because it ignores that *Hegdepeth* offers an alternative avenue—not the exclusive avenue—for asserting a claim for negligent infliction of emotional distress. Here, the plaintiffs do not rely on any special relationship, but rather seek to allege that

O'Brien's negligent actions put them in the "zone of danger." Pls.' Opp'n at 16; *see also* Am. Compl. ¶¶ 16−18. In particular, the plaintiffs allege that Hawkins carried Sparkle when O'Brien's police vehicle entered the crowd and struck her. *See* Am. Compl. ¶¶ 12, 18. Taken as true, these allegations indicate that both plaintiffs may have been in a zone of danger created by O'Brien's negligent actions.

Nevertheless, the plaintiffs fail to state a claim for negligent infliction of emotional distress for two reasons. First, insofar as the plaintiffs' claim relies on O'Brien's conduct after exiting his vehicle, the plaintiffs only plead facts necessary for an *intentional* infliction of emotional distress claim, as discussed above.[12] *See supra* Section III.C.3. Furthermore, the plaintiffs' theory of liability for negligent infliction of emotional distress is indistinguishable from their claim for intentional infliction of emotional distress. Paragraphs 47−49 of the amended complaint under Count VI (negligent infliction of emotional distress) are identical to paragraphs 44−46 of Count V (intentional infliction of emotional distress). Am. Compl. at 8−10. Although the plaintiffs separate the intentional infliction of emotional distress and the negligent infliction of emotional distress causes of action, *see id.*, that is where their effort to distinguish the two claims stops. "In essence, plaintiffs point to the same intentional acts that underlie their other tort claims, but they append the word 'negligently'. This is insufficient." *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 25 (D.D.C. 2006).

Second, with regard to the plaintiffs' claim for negligent infliction of emotional distress, they fail to plead the required "serious and verifiable" emotional distress. "'Serious and verifiable' means that the distress must have manifested in an external condition or physical

---

[12] O'Brien did not move to dismiss the intentional infliction of emotional distress claim. Thus, the Court does not decide whether the amended complaint adequately pleads an intentional infliction of emotional distress claim.

symptoms." *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) (citing *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991)). "[T]he emotional distress must be acute, enduring or life-altering." *Hedgepeth*, 22 A.3d at 817; *see, e.g.*, *Sibley v. St. Albans Sch.*, 134 A.3d 789, 797−98 (D.C. 2016) (allegations of emotional trauma, disappointment, and hurt deemed insufficient to support a negligent infliction of emotional distress claim). Here, the plaintiffs do not allege acute, enduring, life-altering emotion distress that manifests in an external condition or physical symptoms. Instead, they make vague allegations about the plaintiffs' fear. *See* Am. Compl. ¶ 15 ("Sparkle became very frightened and was in pain and began to cry."); *id.* ¶ 21 ("Mr. Hawkins was left in fear of his life and his dignity torn from him . . . Mr. Hawkins is unable to feel safe while going outside and does not feel that he is being protected by the police force . . . ."); *id.* ¶ 22 ("Mr. Hawkins is unable to trust that his safety is a priority any longer and that another officer will not attack him and this time shoot him."). The plaintiffs further allege that they "continue to suffer" and that the incident "caused emotional and psychological trauma." *Id.* ¶ 20. But even construed in the plaintiffs' favor, these statements do not allege the serious, physical manifestations of emotional distress required to state a claim. The most serious of the allegations—that the incident caused the plaintiffs emotional trauma—mirrors the insufficient allegation in *Sibley*. 134 A.3d at 798 & n.3. Because the plaintiffs have not pleaded "serious and verifiable" emotional distress, the Court will dismiss their claim for negligent infliction of emotional distress.

D.      **Section 1983, 1985, 1986, and 1988 Claims**

The plaintiffs also attempt to state claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. As a preliminary matter, WMATA is not a person and cannot be sued under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Likewise, government officials sued in their official capacities for monetary damages are not persons under Section 1983. *Id.* Thus, the Court will dismiss any Section 1983 claims against WMATA and against O'Brien in his official capacity.

State officials may, however, be held liable when they are sued in their individual capacities, as they are then "persons" under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Here, the plaintiffs' action is against O'Brien in both his official and individual capacities, Am. Compl. ¶ 8, and the defendants have not moved to dismiss the Section 1983 claim against O'Brien in his individual capacity, *see* Defs.' Mem. at 3–15. Thus that claim is unaffected by O'Brien's partial motion to dismiss.

The plaintiffs also attempt to state a claim under Sections 1985, 1986, and 1988. *See* Am. Compl. at 7 ("1986 and 1988"); *see also* Pls.' Opp'n at 10–11 (supporting "claims under Sections 1986 and 1988," and asserting that "[t]he complaint includes facts in support of 1985"). Sections 1985 and 1986 together provide a cause of action for those who have been wronged by individuals who conspire to obstruct justice and deprive persons of civil rights. 42 U.S.C. §§ 1985–86. Section 1985 describes the qualifying conspiracies, and Section 1986 provides for liability. *Id.* Section 1988 provides for jurisdiction, attorney's fees, and expert fees, but it does not establish an independent cause of action. *Id.* § 1988. The amended complaint refers to 42 U.S.C. § 1986, but does not allege any conspiracy under Section 1985, *see* Am. Compl, ¶¶ 37−39, which is a "prerequisite to stating an adequate claim for neglect to prevent under Section

1986." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007). The complaint therefore fails to state a claim under Sections 1985 and 1986.

In their opposition brief, the plaintiffs attempt to cure this defect by asserting a brand new theory of liability and new facts: namely, that the defendants *conspired* to violate the plaintiffs' rights based on their race. *See* Pls.' Opp'n at 11−13. Simultaneously, the plaintiffs' assert that any defects could be cleared up by amending the complaint yet again, but they do not move for leave to amend their complaint as required by Rule 15(a) and Local Rule 15.1.[13] Pls.' Opp'n at 11; *see Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). The plaintiffs cannot overcome a 12(b)(6) motion by adding new information, much less a new cause of action, in a brief. *See Iqbal*, 556 U.S. at 678. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).

As it stands, the amended complaint completely lacks the allegations necessary for a Section 1985 claim. In fact, far from conspiring with O'Brien to harm the plaintiffs, no police officer mentioned in the complaint supported O'Brien's actions. *See* Am. Compl. ¶ 17. Rather, the other officers allegedly tried to stop O'Brien by yelling "stop" and "put away your weapon." *Id.* These allegations hardly amount to a conspiracy. Therefore, the Court will dismiss the Section 1985 and 1986 claims, as well as any claim under Section 1988 to the extent that it pertains to the Sections 1985 and 1986 claims and the Section 1983 claims against WMATA and O'Brien in his official capacity.

---

[13] The plaintiffs already had an opportunity to cure such defects in their amended complaint. The defendants raised the same arguments against the plaintiffs' Section 1985 and 1986 claim when moving to dismiss the plaintiffs' first complaint. Defs.' Original Mot. at 10−11.

### E.    Additional Defendants

Finally, the original complaint in the Superior Court of the District of Columbia attempted to name WMATA, O'Brien, some unknown police officers, and the District of Columbia as defendants. *See* Compl. at 1, Dkt. 1-2. The District of Columbia was never served and thus was not party to the case upon removal. *See* Notice of Removal at 2, Dkt. 1. In addition, although the amended complaint again names "several unknown police officers" as defendants, Am. Compl. at 2, the plaintiffs do not make a single allegation against these unknown police officers. Indeed, the amended complaint states merely that other officers yelled at O'Brien to calm down and put his gun away, hardly a cause of action. *See id.* ¶¶ 17–18. Therefore, the Court will dismiss any purported claims against the unknown officers.

### CONCLUSION

For the foregoing reasons, it is

**ORDERED** that WMATA's Motion to Dismiss, Dkt. 14, is **GRANTED**, and Officer O'Brien's Partial Motion to Dismiss, Dkt. 14, is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, it is

**ORDERED** that the all claims against WMATA are **DISMISSED WITHOUT PREJUDICE**. It is further

**ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (1) Mark Hawkins's battery claim against O'Brien; (2) the plaintiffs' "gross negligence" claims against O'Brien; (3) the plaintiffs' negligence claims against O'Brien, insofar as the claims extend to O'Brien's alleged conduct after exiting the vehicle; (4) the plaintiffs' negligent infliction of emotional distress claims against O'Brien; (5) the plaintiffs' claims under 42 U.S.C. § 1983 against O'Brien in his official capacity; (6) the plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986, as well as any claims under 42 U.S.C. § 1988 to the extent that they relate to the dismissed

claims (*i.e.*, the dismissed claims under 42 U.S.C. §§ 1985 and 1986, and the dismissed claims under 42 U.S.C. § 1983 against WMATA and O'Brien in his official capacity); and (7) the purported claims against additional police officers. It is further

ORDERED that the remainder of Officer O'Brien's Partial Motion to Dismiss is DENIED. As a result, the only remaining counts in this case are as follows: (1) both plaintiffs' assault claims against O'Brien (Count I); (2) Sparkle Hawkins's battery claim against O'Brien (Count I); (3) both plaintiffs' negligence claims against O'Brien insofar as the claims pertain to O'Brien's driving, not his intentional conduct after exiting his vehicle (Count II); (4) both plaintiffs' claims under 42 U.S.C. § 1983 against O'Brien in his individual capacity (Count III); and (5) both plaintiffs' intentional infliction of emotional distress claims against O'Brien (Count V). Finally, it is

ORDERED that, in accordance with Rule 12(a)(4) of the Federal Rules of Civil Procedure, the defendant shall answer or otherwise respond to the complaint on or before May 11, 2018. *See* Fed. R. Civ. P. 12(a)(4).

DABNEY L. FRIEDRICH
United States District Judge

Date: April 27, 2018