UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK ANTHONY HAWKINS,

*Plaintiff*,

v.

No. 17-cv-1982 (DLF)

DISTRICT OF COLUMBIA, *et al.*,

*Defendants*.

## MEMORANDUM OPINION

Plaintiff Mark Anthony Hawkins (Hawkins) brings this action on behalf of himself and his daughter, Sparkle Hawkins (Sparkle), against Washington Metropolitan Area Transit Authority (WMATA) police officer William O'Brien. The plaintiffs allege that O'Brien acted unlawfully during an interaction with them on February 17, 2017. Before the Court are the plaintiffs' Motion for Partial Summary Judgment, Dkt. 25, and O'Brien's Cross-Motion for Summary Judgment, Dkt. 27. For the reasons that follow, the Court will grant O'Brien's cross-motion and deny the plaintiffs' motion.

## I. BACKGROUND

On February 17, 2017, the plaintiffs[1] attended a Disney on Ice show at the Verizon Center (now the Capital One Arena) in Washington, D.C. *See* Def.'s Statement of Material Facts Not in Dispute ¶ 6, Dkt. 27. Sometime between 9:30 p.m. and 9:46 p.m., the Disney on Ice show ended. *Id*. ¶ 10. The plaintiffs, along with a "large crowd of people," left the Verizon Center

---

[1] While the Amended Complaint lists only Mark Anthony Hawkins as the plaintiff, the Court previously held that the case could proceed with Hawkins acting in his own capacity and as next friend of his daughter, Sparkle. *See* Mem. Op. & Order at 7–8.

through the main entrance on F Street, N.W., and they "descended onto the sidewalk and street." *Id*. While walking to the Gallery Place Metro Station, Hawkins and Sparkle stood on the curb of the sidewalk on F Street, N.W., while their other family members attempted to watch a pair of drummers playing outside of the station. *Id*. ¶ 12. Hawkins saw O'Brien getting into a Metro Transit police vehicle parked next to the curb on F Street, N.W. *Id*. ¶ 13. Hawkins then saw O'Brien activate his lights and siren. *Id*. Initially, the crowd of people did not move from around his vehicle. *Id*. ¶ 19. Hawkins's "back was facing the curb of the sidewalk with Sparkle Hawkins at his side" and he "also did not move from the curb when he heard the sirens activated even though he knew Officer O'Brien was attempting to clear the crowd from around his vehicle." *Id*. ¶ 20.

Citing solely to their complaint, the plaintiffs allege that at this point, O'Brien drove his vehicle at a high speed into a crowd of pedestrians. *See* Pls.' Mot. at 1–2. They further allege that O'Brien "struck Mr. Hawkins['s] daughter, Sparkle, in the arm with the side view mirror." *Id*. at 2 (alterations adopted). They also allege that O'Brien then stopped his vehicle, pulled out his gun and pointed it at Hawkins. *Id*.

O'Brien vigorously disputes the plaintiffs' version of the facts. According to O'Brien's statement of material facts not in dispute (which the plaintiffs have not contested), O'Brien asked the crowd to disperse over the vehicle's P.A. system, and eventually, people began to move. *See* Def.'s Statement of Material Facts Not in Dispute ¶ 21. He then pulled away from the curb. *Id*. As he was driving away, "people began banging on [his] police vehicle." *Id*. ¶ 22. O'Brien asserts that he was "[u]naware of why people were banging on his police vehicle" and that he "immediately stopped" the vehicle. *Id*. ¶ 23. He then opened his door to investigate the banging, and "fearing for his safety," he "kept his hand . . . positioned on his weapon . . . and removed his

hand from his weapon when he determined that the angry crowd of people were not trying to attack him." *Id*. ¶ 24 (internal quotation marks omitted). He "was told that the mirror to his police vehicle struck Sparkle Hawkins." *Id*. ¶ 25. He also inspected his police vehicle and saw no sign of damage. *Id*. ¶ 27. A female Metropolitan Police Department officer in the area inspected Sparkle. *Id*. ¶ 28. O'Brien then left the scene and responded to his emergency call for service. *Id*. ¶ 29. According to O'Brien's statement of facts in dispute, he "dispute[s] the veracity" of the assertion that he struck Sparkle and he denies that he pointed his handgun at anyone. Def.'s Statement of Material Facts in Dispute ¶¶ 4–5.

Both parties agree that Sparkle was not taken to the hospital on the day of the incident, but Hawkins and Sparkle's mother took her to Bowie Health Clinic the next day. *See* Def.'s Statement of Material Facts Not in Dispute ¶¶ 30–31. The plaintiffs do not identify Sparkle's injuries and they agree that Sparkle did not sustain any mental injuries or seek mental health treatment. *See id*. ¶ 34. And they agree that Hawkins was not hurt and did not seek any medical treatment as a result of the incident, nor did he report or sustain any injury. *Id*. ¶ 32.

On August 29, 2017, the plaintiffs filed their complaint in the Superior Court for the District of Columbia. Dkt. 1-2. The defendants removed the case to federal court. *See* Notice of Removal, Dkt. 1-5. On April 27, 2018, the Court dismissed some of the plaintiffs' claims. *See* Mem. Op. & Order at 20–21. Following discovery, the plaintiffs filed a motion for partial summary judgment on Sparkle's assault, negligence and intentional infliction of emotional distress (IIED) claims.[2] O'Brien then filed a cross-motion for summary judgment as to the plaintiffs' remaining claims: (1) Hawkins's and Sparkle's assault claims against O'Brien;

---

[2] The plaintiffs' motion is unclear, *see* Pls.' Mot. at 4, but the Court construes it as a motion for summary judgment on Sparkle's assault, negligence and IIED claims.

(2) Sparkle's battery claims against O'Brien; (3) Hawkins's and Sparkle's negligence claims against O'Brien relating to his driving; (4) Hawkins's and Sparkle's claims under 42 U.S.C. § 1983 against O'Brien in his individual capacity; and (5) Hawkins's and Sparkle's IIED claims against O'Brien.

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Holcomb*, 433 F.3d at 895 (internal quotation marks omitted).

In response to a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586 (1986). "[T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal quotation marks omitted) (emphasis added in the original). A party asserting that a fact is *genuinely* disputed "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3).

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23.

### III. ANALYSIS

#### A. Summary Judgment Standard

Contrary to Federal Rule of Civil Procedure 56 and Local Rule 7(h), the plaintiffs have failed to cite to any evidence in the record that supports their motion for partial summary judgment or their opposition to O'Brien's cross-motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(3); LCvR 7(h)(1). Moreover, contrary to Local Rule 7(h), the plaintiffs have failed to include in their motion for partial summary judgment "a statement of material facts as to which . . . there is no genuine issue." *Id*. Nor have they included in their opposition to O'Brien's motion for summary judgment "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." *Id*.

The plaintiffs' "Statement of Facts" in support of their motion for summary judgment cites exclusively to their complaint.[3] *See* Pls.' Mot. at 1–2. The plaintiffs allege that O'Brien "was the driver of a marked police van" that he operated "at a high speed . . . into the crowd of pedestrians," that he "struck Mr. Hawkins['s] daughter, Sparkle" in the arm with the side view mirror, and that he exited his vehicle and "pulled out his gun," pointing it at Hawkins. *Id*. But each of these allegations appear to be wholly unsupported by the record. Likewise, the plaintiffs' "Statement of Facts in Dispute" in support of their opposition to O'Brien's motion for summary judgment is devoid of any citations to the record. Again, the plaintiffs allege that O'Brien drove his vehicle at a high rate of speed, that his side view mirror hit Sparkle, and that he "pulled his handgun and pointed it at Mr. Hawkins," *see* Pls.' Opp'n at 2–3, but the plaintiffs provide no evidentiary support for these allegations. Although the plaintiffs assert that "Mr. Hawkins testified that he was held at gunpoint," Pls.' Opp'n at 3, they provide no citations to Hawkins's deposition transcript. They also attach excerpts from O'Brien's deposition transcript to their opposition brief, but these excerpts merely address O'Brien's prior traffic violations and disciplinary actions, not the specific allegations in the plaintiffs' complaint and briefs. *See* Pls.' Opp'n Ex. 1, Dkt. 29-2.

The plaintiffs' repeated citations only to their complaint fall far short of the required standard necessary to support or defend against a motion for summary judgment. The obligations of summary judgment "cannot be met by mere allegation or denial, but instead, require a showing by affirmative evidence." *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988) (internal quotation marks omitted); *see also First Nat. Bank of Ariz. v. Cities*

---

[3] The plaintiffs' motion also appears to cite only to their initial complaint, and not to their amended complaint, the operative complaint in the case.

*Serv. Co.*, 391 U.S. 253, 289 (1968) (granting summary judgment for defendant because of the "absence of any significant probative evidence tending to support the complaint"). And the Supreme Court has "has unambiguously declared that the nonmoving party must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Frito-Lay, Inc.*, 863 F.2d at 1033 (citing *Celotex*, 477 U.S. at 324). The plaintiffs' failure to point to *any* evidence in the record in support of their factual assertions is fatal to both their motion for partial summary judgment and their opposition to O'Brien's motion for summary judgment. *See Anderson*, 477 U.S. at 248 (A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.").

Moreover, in ruling on a motion for summary judgment, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1); *see also Oviedo v. Washington Metro. Area Transit Auth.*, No. 18-7037, 2020 WL 424944, at *7–8 (D.C. Cir. Jan. 28, 2020) (affirming grant of summary judgment against a pro se plaintiff who failed to dispute the defendant's statement of facts); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (holding that district court may deem facts that do not comply with Rule 56(e) or the local rule as admitted because "the district court is under no obligation to sift through the record . . . in order to evaluate the merits of that party's case"). Because the plaintiffs have failed to contradict, with citations to the record, the factual assertions set forth in O'Brien's statement of material facts in dispute, pursuant to Local Rule 7(h)(1), the Court takes as admitted that O'Brien did not point

7

his weapon at anyone; that the side view mirror on his vehicle did not hit Sparkle; and that he was not operating his vehicle at a high rate of speed. *See* Fed R. Civ. P 56(e)(2); Def.'s Mot. at 4–5; *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) ("This circuit has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court."). Based on the plaintiffs' failure to comply with Rule 56 and Local Rule 7(h)(1), and for the reasons stated below, there is no genuine dispute of material fact in this case.

### B. Assault Claims

In the District of Columbia, an individual is subject to liability for assault if "(a) they act intending to cause a harmful or offensive contact, or an imminent apprehension of such a contact, and (b) the other party is thereby put in such imminent apprehension." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92 (D.D.C. 2010) (alterations adopted) (internal quotation marks omitted). An individual "will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault." *Id*. And an "essential element of . . . assault is . . . *intentional* putting another in apprehension," and absent such an allegation a complaint is "clearly deficient." *Id*. (citing *Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973) (emphasis in original)).

There is no evidence that O'Brien intended to put either Hawkins or Sparkle in imminent apprehension of harm. As explained in *supra* Part III.A, the plaintiffs have not pointed to any record evidence suggesting that O'Brien unholstered his weapon. In their motion for summary judgment, they assert that "O'Brien stopped his vehicle, [exited his] vehicle, pulled out his gun" and "pointed it at Mr. Hawkins as he approached Mr. Hawkins and Sparkle," but they cite only to the complaint to support these assertions. Pls.' Mot. at 2. Their "Statement of Facts in Dispute" in their opposition brief asserts that O'Brien "pulled his handgun and pointed it at Mr.

8

Hawkins," but this assertion cites back to "ECF # 25-1 – Pls' Memo. at 2," which is the citation for their initial motion for summary judgment. The plaintiffs point to no evidence in the record that supports any of these assertions of fact. In contrast, O'Brien's "Statement of Material Facts" in his cross-motion for summary judgment states that "he did not point his handgun and/or weapon at anyone" and cites to O'Brien's deposition and his answers to interrogatories. *See* Def.'s Statement of Material Facts in Dispute ¶ 5; O'Brien Dep. at 107:12–108:8, 141:6–18, 176:8–177:3; Def.'s Mot. Ex. 3 ("O'Brien's Answers to Interrogs.") at 3, Dkt. 27-5. Because the plaintiffs have not contradicted O'Brien's testimony with any evidence from the record, the Court considers the fact that O'Brien never raised his gun at anyone undisputed. *See* Fed R. Civ. P 56(e)(2). Without any evidence to support an essential element of assault—that O'Brien acted with the intent of placing Hawkins and Sparkle in imminent apprehension of harmful contact—the plaintiffs' assault claims fail.

### C. Sparkle's Battery Claim

A claim for battery is actionable "only if the plaintiff has alleged that the defendant has committed (a) 'harmful or offensive contact with a person,' which, (b) 'result[s] from an act intended to cause that person to suffer such a contact,'" *Acosta Orellana*, 711 F. Supp. 2d at 90–91 (quoting *Person v. Children's Hosp. Nat'l Med. Ctr.,* 562 A.2d 648, 650 (D.C. 1989)).

Again, relying solely on their complaint, the plaintiffs assert that O'Brien drove a "marked police van" at a "high speed" into a crowd of pedestrians and "struck Mr. Hawkins daughter, Sparkle[,] in the arm with the side view mirror." Pls.' Mot. at 2; *see also* Pls.' Opp'n at 2 ("O'Brien's police vehicle's mirror struck Sparkle").

O'Brien disputes these assertions with specific citations to the record. He testified that he did not hit Sparkle and that he did a preliminary investigation that found no evidence his vehicle

9

made contact with her. *See* Def.'s Statement of Material Facts in Dispute ¶ 4; O'Brien Dep. at 106:7–107:22; O'Brien's Answers to Interrogs. at 3.

Moreover, even if O'Brien did hit Sparkle with his vehicle, there is no evidence he did so intentionally. Both O'Brien and Hawkins testified that O'Brien instructed the crowd of people surrounding his car to leave the area. *See* Hawkins Dep. at 93:1–7; O'Brien Dep. at 103:3–15. Hawkins also testified that O'Brien put his sirens on, then waited as people moved away from his vehicle before starting to drive. Hawkins Dep. 85:8–86:8. This evidence refutes the plaintiffs' unsupported claim that O'Brien intentionally hit Sparkle with his vehicle. Indeed, O'Brien testified that he had no idea that he might have hit someone until others told him he had hit a child. *See* O'Brien Dep. at 106:7–8, 113:11–114:5. In light of the undisputed facts, O'Brien is entitled to summary judgment on the battery claim.

### D. Negligence Claims

Negligence requires "(1) the existence of a duty owed by the defendant to the plaintiff, (2) a negligent breach of that duty by the defendant, and (3) an injury to the plaintiff (4) proximately caused by the defendant's breach." *Powell v. District of Columbia*, 602 A.2d 1123, 1133 (D.C. 1992) (concurring opinion). The plaintiffs allege that O'Brien operated his vehicle negligently when he drove into the crowd at a high rate of speed and hit Sparkle. Both of their negligence claims fail.[4]

First, the record contains no evidence that either Sparkle or Hawkins were injured. The plaintiffs do not allege in the complaint, much less put forth any evidence, that Hawkins was injured, as it alleges that the vehicle hit only Sparkle. ¶ 14. The complaint does allege that

---

[4] The plaintiffs appear to argue that O'Brien was grossly negligent. *See* Pls.' Opp'n at 8. But the Court rejected any gross negligence claims in its prior opinion and allowed only a negligence claim to proceed on the basis of O'Brien's driving. *See* April 27, 2018 Mem. Op. & Order at 12.

Sparkle was injured, but aside from stating that Sparkle's mother took her to the Bowie Health Clinic the day after the incident, *see* Pls.' Statement of Facts Not in Dispute ¶¶ 30–31, the plaintiffs offer no evidence of her injury.

Second, based on the WMATA Compact and the D.C. Code, O'Brien cannot be liable for negligent operation of his vehicle while he responded to an emergency call. Section 76(b) of the WMATA Compact requires that WMATA officers be treated the same as police officers of the jurisdiction in which they are assigned, including on issues of immunity.[5] *See* D.C. Code § 9-1107.01(76(b)); *Griggs v. Washington Metro. Area Transit Auth.*, 232 F.3d 917, 921 (D.C. Cir. 2000). Because the incident occurred in the District of Columbia, O'Brien has the same "powers" and "limitations" as the District of Columbia Metro Police Officers. And in the District of Columbia, an employee cannot be held liable for negligent operation of a vehicle for personal injury as long as the employee was acting within the scope of his employment. The D.C. Code mandates that:

> [N]o civil action or proceeding shall be brought or be maintained against an employee of the District . . . for personal injury, including death, resulting from the operation by such employee of any vehicle if it be alleged in the complaint or developed in a later stage of the proceeding that the employee was acting within the scope of his office or employment, unless the District shall, in an action brought against it for such damage or injury, including death, specifically deny liability on the ground that the employee was not, at the time and place alleged, acting within the scope of his office or employment.

---

[5] The full provision reads:

> A member of the Metro Transit Police shall have the same powers, including the power of arrest, and shall be subject to the same limitations, including regulatory limitations, in performance of his or her duties as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his or her duties. A member of the Metro Transit Police is authorized to carry and use only such weapons, including handguns, as are issued by the Authority. A member of the Metro Transit Police is subject to such additional limitations in the use of weapons as are imposed on the duly constituted police force for the political subdivision in which he or she is engaged in the performance of his or her duties.

D.C. Code § 2-415 (2001).

O'Brien testified that when the incident occurred, he was on his way to an emergency call, with his lights and sirens activated. O'Brien Dep. at 89:15–91:13, 93:1–11. Because O'Brien was acting within the scope of his employment when he responded to the emergency call, he is immune from suit for any injury to Sparkle "resulting from the operation" of his vehicle. *See Perkins v. United States*, 183 F. Supp. 2d 69, 71 (D.D.C. 2002) (holding that a plaintiff cannot sue an employee of the District of Columbia for damages arising out of an automobile accident when the employee was acting within the scope of his employment). Thus, O'Brien is entitled to summary judgment on the negligence claims.

### E. 42 U.S.C. § 1983 Claims

The plaintiffs appear to be alleging a § 1983 claim against O'Brien in his individual capacity based on his use of excessive force, in violation of the Fourth Amendment. *See* Am. Compl. ¶¶ 38–39. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The plaintiffs appear to base their § 1983 claim on their assertion that O'Brien pointed a gun at Hawkins and Sparkle. *See* Am. Compl. ¶ 39. Because the Court considers the fact that O'Brien never raised his gun at anyone undisputed, the plaintiffs' Section 1983 claim fails on this ground alone. According to the admitted facts, O'Brien exited his vehicle and kept his hand "positioned on his weapon," but he never unholstered the weapon. *See* Def.'s Statement of Material Facts in Dispute ¶ 5; Def.'s Statement of Material Facts Not in Dispute ¶ 24; O'Brien's Answers to Interrogs. at 3.

He eventually removed his hand from the weapon when he determined that the crowd of people surrounding him were not trying to attack him. *Id*. This conduct does not demonstrate that O'Brien used any force, let alone that he violated the plaintiffs' constitutional rights by using excessive force. Thus, O'Brien is entitled to summary judgment on the § 1983 claim.

### F. Intentional Infliction of Emotional Distress Claims

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 76 (D.D.C. 2018) (quotation and citation omitted)). Rather, "'[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Horman v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).

O'Brien's conduct was neither "extreme and outrageous" nor intentional. As stated in *supra* Part III.E., taking the facts that the plaintiffs fail to support as admitted, O'Brien did not take his handgun out of the holster and he never pointed it at anyone. Exiting the car with his hand placed on his handgun for safety hardly amounts to conduct that goes "beyond all possible bounds of decency." And there is no evidence that his conduct caused emotional distress to either Hawkins or Sparkle. *See* Def.'s Statement of Material Facts Not in Dispute ¶¶ 31–34. The Court will therefore grant summary judgment to O'Brien on the IIED claims.

13

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for partial summary judgment is denied, and O'Brien's motion for summary judgment is granted. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

February 7, 2020